# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK A. GHRIST, | ) | |
| Plaintiff, | ) | Civil Action No. 12-1210 |
| v. | ) | Judge Cathy Bissoon |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 7) will be denied, and Defendant's Motion for Summary Judgment (ECF No. 9) will be granted.

Mark A. Ghrist ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 – 433, 1381 – 1383f ("Act"). An Administrative Law Judge ("ALJ") denied benefits to Plaintiff on September 14, 2010, following an administrative hearing. (R. at 7 – 61).[1] Subsequently, a request for review by the Appeals Council was denied, and Plaintiff filed the present Complaint in this Court on August 24, 2012. (R. at 1 – 6; ECF No. 2). Defendant filed an Answer on October 25, 2012. (ECF No. 5). Cross motions for summary judgment followed. (ECF Nos. 7, 9).

---

[1] Citations to ECF Nos. 6 – 6-10, the Record, *hereinafter*, "R. at __."

The ALJ determined that Plaintiff had medically determinable severe impairments, namely, bipolar disorder, attention deficit hyperactivity disorder ("ADHD"), generalized anxiety disorder with panic attacks, depression, obsessive-compulsive personality traits and history of opioid dependence. (R. at 12). However, he had the functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: only simple, routine, repetitive work; only occasional interaction with the general public, co-workers and supervisors; only 1-2 step tasks; little independent decision-making; and working primarily with objects and not people. (R. at 16). Consistent with the testimony of the vocational expert, the ALJ found that Plaintiff thereby qualified for a significant number of jobs in existence in the national economy. (R. at 20 – 21).

Plaintiff objects to the decision of the ALJ, arguing that she erred in failing to give appropriate weight to the findings of Plaintiff's treating medical sources in favor of the opinions of state agency and consultative examiners, and in failing to give adequate consideration to Plaintiff's low global assessment of functioning ("GAF") scores. (ECF No. 8 at 1 – 8).[2] Defendant counters that the decision of the ALJ was properly supported by substantial evidence from the record, and should be affirmed. (ECF No. 10 at 8 – 17). The Court agrees with Defendant.

In order to qualify for DIB or SSI, a claimant must prove to the Commissioner that he is incapable of engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986). When reviewing a claim, the Commissioner must

---

[2] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000).

utilize a five-step sequential analysis to evaluate whether a claimant has met this requirement. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003). Assuming a claimant meets his burden at Steps 1 through 4, Step 5 places a burden upon the Commissioner to show that a particular claimant is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Additionally, the facts relevant to a particular case are limited to those records that were available to the ALJ when rendering his decision. All other records newly submitted to the Appeals Council or Court will not be considered,[3] and will not inform the decision of the court. *See Matthews v. Apfel*, 239 F. 3d 589, 592, 594 – 95 (3d Cir. 2001).[4]

Plaintiff first argues that the ALJ did not give sufficient consideration to the findings of therapist Kerry R. Reed, M.A. – a medical source having treated Plaintiff on approximately ten occasions – indicating that Plaintiff could not get along with others, could not receive instruction and was severely depressed. (ECF No. 8 at 1 – 3). Mr. Reed also assigned a GAF score of 40 to Plaintiff. (ECF No. 8 at 1 – 2).[5] Plaintiff was counseled by Mr. Reed between March 2010

---

[3] Exhibits 12E, 13E, 13F, 14F, 15F; R. at 1 – 6, 221 – 24, 430 – 45.

[4] The Appeals Council may decline review of a claimant's case when the ALJ's decision is not at odds with the weight of the evidence on record. *Matthews*, 239 F. 3d at 592. In such a case, a district court can only review that evidence upon which the ALJ based his or her decision. *Id.* at 594 – 95. As a result, new evidence presented by a claimant to the Appeals Council, but not reviewed, is not within the purview of a district court when judging whether substantial evidence supported an ALJ's determination. *Id*. Furthermore, a district court lacks the authority to review the Appeals Council's decision to deny review of the ALJ's decision. *Id.* at 594. Here, Plaintiff failed to make the required showing under *Szubak v. Sec'y of Health and Human Serv.*, 745 F. 2d 831 (3d Cir. 1984), for remand to reconsider the case in light of newly submitted evidence not considered by the ALJ when making his decision. Therefore, the case will not be remanded for this purpose, and Exhibits 12E, 13E, 13F, 14F, and 15F (R. at 221 – 24, 430 – 45) will not be addressed.

[5] An individual with a GAF score of 31 – 40 may have "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000).

3

and May 2010. (R. at 310 – 28). In his initial evaluation of Plaintiff, Mr. Reed indicated that Plaintiff had ADHD, bipolar disorder, NOS and generalized anxiety disorder. (R. at 328). He indicated that Plaintiff suffered poor judgment, insight, and attention/concentration and very poor memory and impulse control. (R. at 328). Plaintiff reported that he saw his children regularly, had a good relationship with his siblings, and an "ok" relationship with his parents. (R. at 324 – 25).

The ALJ enumerated a variety of reasons why he did not accord the more severe findings of Mr. Reed significant weight. He first cited the psychiatric evaluation of treating psychiatrist Michael T. Malayil, M.D., in December 2008, wherein Plaintiff was diagnosed with bipolar affective disorder, and was assigned a GAF score of 70. (R. at 13 – 14, 18, 293 – 94).[6] Dr. Malayil noted that Plaintiff claimed to have lost his former business and employment due to drug abuse and unspecified emotional issues. (R. at 293). Dr. Malayil indicated that Plaintiff was in treatment for his drug abuse issues, was sober, had periods of depression, and had labile affect with no suicidal ideation or hallucinations. (R. at 293). Plaintiff had some insight. (R. at 293). Dr. Malayil managed Plaintiff's medication regimen through May 2009. (R. at 296 – 99). Plaintiff complained of difficulties with memory and anxiety, but did not comply with Dr. Malayil's treatment recommendations. (R. at 196 – 99). Additionally, therapist Diane Kerrigan, M.S., L.P.C., noted that Plaintiff attended only fourteen therapy sessions with her, one psychiatric evaluation, and three medication checks with Dr. Malayil. (R. at 296). Plaintiff was discharged from Dr. Malayil and Ms. Kerrigan's care because he missed twenty-seven scheduled treatment sessions. (R. at 296).

---

[6] An individual with a GAF score of 61 – 70 may have "[s]ome mild symptoms" or "some difficulty in social, occupational, or school functioning, but generally functioning pretty well" and "has some meaningful interpersonal relationships." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000).

4

The ALJ also looked to the findings of consultative examiner Lanny Detore, Ed. D. (R. at 13 – 15, 17 – 18). He examined Plaintiff on November 20, 2008, and concluded that Plaintiff suffered from mood disorder, NOS, anxiety disorder and obsessive-compulsive personality features. (R. at 269). Plaintiff informed Dr. Detore that he had regular contact with his children and engaged in activities of daily living without issue. (R. at 268). Plaintiff reported avoiding public places and people due to panic and anxiety. (R. at 268). He also admitted to a lengthy history of drug abuse. (R. at 268 – 69). However, Plaintiff's anxiety was reduced by prescription medication. (R. at 270). He did not neglect his hygiene, he was cooperative and pleasant, and he was capable of managing his own benefits. (R. at 269 – 70). Dr. Detore found Plaintiff would experience no more than moderate functional limitations. (R. at 271 – 72).

The ALJ also noted the Mental Residual Functional Capacity Assessment ("RFC") of state agency evaluator Roger Glover, Ph.D. (R. at 18). Dr. Glover indicated that Plaintiff could engage in work involving simple instruction, one and two step tasks and little independent decision-making. (R. at 18, 275 – 76). *See Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 361 (3d Cir. 2012) ("[s]tate agent opinions merit significant consideration").

Of further import were the findings of treating psychiatrist Leyla Somen, M.D. – practicing in the same outpatient clinic as Mr. Reed. (R. at 14 – 15). In her first evaluation of Plaintiff in March 2010, Dr. Somen diagnosed Plaintiff with opioid dependence and borderline personality disorder. (R. at 319 – 20). She assigned a GAF score of 70 – 80. (R. at 320).[7] Dr. Somen opined that Plaintiff was "not reliable." (R. at 321). He also admitted to her that he did not take his prescribed medications every day. (R. at 321). At medication management

---

[7] An individual with a GAF score of 71 – 80, may exhibit "transient and expectable reactions to psychosocial stressors" and "no more than slight impairment in social, occupational, or school functioning." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000).

5

sessions in April and May 2010, Dr. Somen noted that Plaintiff liked his medications and, in spite of his numerous complaints, was cooperative, organized, cognitively intact and displayed good insight and judgment. (R. at 314 – 15). He complied with his medication regimen and experienced no side effects. (R. at 314 – 15). In therapy sessions with Mr. Reed through May 2010, Plaintiff's mood was noted to be "good," "calm," and "euthymic." (R. at 310 – 13). Plaintiff saw improvement in his symptoms. (R. at 310 – 13). Mr. Reed indicated that Plaintiff's medications were "working well." (R. at 310).

While Plaintiff accurately notes that there were contradictory medical findings within the record presented to the ALJ, when "medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them." *Cotter v. Harris*, 642 F. 2d 700, 705 (3d Cir.1981). In so doing, the ALJ must consider all the evidence and provide a reason for discounting rejected evidence. *Adorno v. Shalala*, 40 F. 3d 43, 48 (3d Cir. 1994) (citing *Stewart v. Sec'y of Health, Educ., and Welfare*, 714 F. 2d 287, 290 (3d Cir. 1983)). However, an ALJ is not bound by the findings of even treating physicians, as the ALJ is the ultimate arbiter of disability eligibility. *Chandler*, 667 F.3d at 361 (quoting *Brown v. Astrue*, 649 F. 3d 193, 197 n. 2 (3d Cir. 2011)); *Adorno*, 40 F. 3d at 47 – 48. A medical finding of "disabled," or "unable to work," is not dispositive, and the ALJ must "weigh the relative worth" of medical opinions. *Adorno*, 40 F. 3d at 47 – 48 (citing *Wright v. Sullivan*, 900 F. 2d 675, 683 (3d Cir. 1990); *Cotter*, 642 F. 2d at 705). Furthermore, a medical opinion is not entitled to any weight if unsupported by objective evidence in the medical record. *Plummer v. Apfel*, 186 F. 3d 422, 430 (3d Cir. 1999) (citing *Jones v. Sullivan*, 954 F. 2d 125, 129 (3d Cir. 1991)).

In the present case, the ALJ bolstered his disability decision with the relatively mild-to-moderate findings of two treating psychiatrists, a consultative examiner, and a state agency

evaluator – none of whom indicated that Plaintiff was so limited as to preclude the ability to sustain full-time work. None of the findings comported with the more severe conclusions reached by Dennis Kreinbrook, Ph.D., a consultative examiner, Victor F. Jabbour, M.D., a primary care physician, and Mr. Reed, a therapist.

Plaintiff also cites primary care physician Dr. Jabbour to bolster his claims of disabling limitations. (R. at 19, 329 – 32). No objective medical findings or narrative accompanied Dr. Jabbour's RFC. Additionally, Plaintiff fails to note that even Dr. Jabbour found Plaintiff to have only moderate difficulty with concentration. (R. at 330). Yet, equivocally, Dr. Jabbour believed that Plaintiff was psychologically incapable of working due to concentration and inability to follow instructions. (R. at 331).

In conjunction with Mr. Reed, Dr. Kreinbrook completed a functional assessment of Plaintiff on June 21, 2009. (R. at 19, 426 – 29). It was determined that Plaintiff suffered from ADHD, recurrent, moderate bipolar disorder, generalized anxiety disorder and opioid dependence in sustained remission. (R. at 428). Plaintiff's GAF score was noted to be 50. (R. at 428).[8] It was the opinion of Dr. Kreinbrook and Mr. Reed that Plaintiff had moderate to severe impairment in overall functioning. (R. at 428 – 29). This included severe impairment in attention, memory and recall. (R. at 428). His thought was tangential, he was irritable, and he was anxious. (R. at 428). Plaintiff was considered unable to effectively function within the home, work or academic environments. (R. at 428). Plaintiff reported to Dr. Kreinbrook and Mr. Reed that therapy had provided him with minimal benefit. (R. at 428). However, as found

---

[8] An individual with a GAF score of 41 – 50 may have "[s]erious symptoms (e.g., suicidal ideation …)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000).

by the ALJ, these conclusions were not consistent with the findings of other medical sources on record. (R. at 14, 19).

The findings of Dr. Kreinbrook, Dr. Jabbour and Mr. Reed notwithstanding, the Court holds that the ALJ identified adequate objective contradictory evidence from the record to justify according those findings diminished weight. While there is no doubt that Plaintiff experienced functional limitation as a result of his impairments, the Court finds that the ALJ adequately accommodated Plaintiff's credibly established limitations in his RFC and hypothetical question to the vocational expert.

For all of the reasons stated above, the Court hereby enters the following:

## II. ORDER

Plaintiff's Motion for Summary Judgment (**ECF No. 7**) is **DENIED**, Defendant's Motion for Summary Judgment (**ECF No. 9**) is **GRANTED**, and the decision of the ALJ is **AFFIRMED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

IT IS SO ORDERED.


September 18, 2013                                    s\Cathy Bissoon
                                                      Cathy Bissoon
                                                      United States District Judge

cc (via ECF email notification):

All Counsel of Record